## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN NEUBERT, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>LEHIGH UNIVERSITY,<br><br>     Defendant. | Case No. 5:24-cv-00831-JFL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT,
CERTIFY THE CLASS,
APPOINT CLASS COUNSEL, APPROVE PROPOSED
<u>CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND AND STATUS OF THE LITIGATION.....................................2

SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT........................4

    A.     Class Definition ..................................................................................4

    B.     The Proposed Class Notice ................................................................5

    C.     Monetary Terms..................................................................................6

    D.     Dismissal and Release of Claims........................................................7

    E.     Proposed Schedule Following Preliminary Approval.............................8

STATEMENT OF THE QUESTIONS INVOLVED ................................................9

ARGUMENT .........................................................................................................9

    A.     The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval.............................10

         i.      The proposal was negotiated at arm's-length. ...........................11

         ii.     The relief provided for the class is adequate ...........................12

         iii.    The settlement accounts for the costs, risks, and delay of trial and appeal......................................................................13

         iv.    The settlement provides for an effective method of distributing relief to the Class. ...............................................................17

         v.     The proposed attorneys' fee award is reasonable ......................17

         vi.    Additional agreements required to be identified under Rule 23(e)(3).......18

         vii.   The remaining Girsh factors also support approval of the Settlement.......18

    B.     The Settlement Treats Class Members Equitably Relative to Each Other ............20

    C.     The Proposed Settlement Class Satisfies the Criteria of Rule 23. .........................20

         i.      Rule 23(a) – Numerosity..........................................................21

ii.    Rule 23(a) – Commonality.........................................................................21

iii.    Rule 23(a) – Typicality .............................................................................22

iv.    Rule 23(a) – Adequacy ............................................................................23

D.    Rule 23(b) Requirements Are Satisfied Here .....................................................23

E.    The Proposed Settlement Notice to the Class Should be Approved....................25

F.    Nicholas A. Colella of Lynch Carpenter, LLP and Michael Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. Should be Appointed as Class Counsel....................................................................................26

CONCLUSION...................................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 20, 23

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. Dec. 15, 1994) ........................................................................ 22

*Caddick v. Tasty Baking Co.*,
  2021 WL 1374607 (E.D. Pa. Apr. 12, 2021) ......................................................... 26

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) .................................................................................. 23

*Edwards v. Horizon Blue Cross Blue Shield of New Jersey*,
  2018 WL 10133574 (D.N.J. June 29, 2018) .......................................................... 13

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .................................................................................... 9

*Fulton-Green v. Accolade, Inc.*,
  2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ......................................................... 15

*Fulton-Green v. Accolade, Inc.*,
  2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ............................................... 9, 10, 13, 20

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ............................................................................ 12

*Geis v. Walgreen Co.*,
  2010 WL 11570447 (D.N.J. Sept. 30, 2010) .......................................................... 16

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ............................................................................ 11, 19

*Hall v. Accolade, Inc.*,
  2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) .......................................................... 9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................. 16

*In re Centocor, Inc. Secs. Litig. III*,
  1999 WL 54530 (E.D. Pa Jan. 27, 1999) ............................................................... 22

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010) ................................................................ 19

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014) ................................................................ 14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ................................................................. 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................... 19

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*,
   2013 WL 504857 (E.D. Pa. Feb. 12, 2013) ............................................. 10

*In re Linerboard Antitrust Litig.*,
   203 F.R.D. 197 (E.D. Pa. 2001) ............................................................... 22

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014) ............................................................... 12

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ......................................................... 22, 24, 25

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012) ............................................................... 13

*In re Processed Egg Prods. Antitrust Litig.*,
   2014 WL 12614451 (E.D. Pa. Dec. 19, 2014) ......................................... 10

*In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ..................................................................... 24

*In re Ravisent Techs., Inc. Sec. Litig.*,
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ........................................ 17, 18

*In re Remicade Antitrust Litig.*,
   2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ....................................... 25, 26

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ......................................................... 15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ....................................................................... 9

*In re Wawa, Inc. Data Sec. Litig.*,
2021 WL 3276148 (E.D. Pa. July 30, 2021) ........................................................... 13

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
2020 WL 4212811 (LHK) ........................................................................................ 16

*Mack Trucks, Inc. v. Int'l Union, UAW*,
2011 WL 1833108 (E.D. Pa. May 12, 2011) ........................................................... 11

*Mehling v. New York Life Ins. Co.*,
246 F.R.D 467 (E.D. Pa. 2007) ............................................................................... 11

*Myers v. Jani-King of Philadelphia, Inc.*,
2019 WL 2077719 (E.D. Pa. May 10, 2019) ............................................................. 9

*Neale v. Volvo Cars of North America, LLC*,
794 F.3d 353 (3d Cir. 2015) .................................................................................... 24

*Reibstein v. Rite Aid Corp.*,
761 F. Supp. 2d 241 (E.D. Pa. 2011) ...................................................................... 19

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300 (E.D. Pa. June 26, 2012) ............................................................... 23

*Schwartz v. Dana Corp.*,
196 F.R.D. 275 (E.D. Pa. 2000) .............................................................................. 21

*Sherman v. American Eagle Exp., Inc.*,
2012 WL 748400 (E.D. Pa. March 8, 2012) ............................................................ 22

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ........................................................................ 20, 21, 24

*Tumpa v. IOC-PA, LLC*,
2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ................................................................ 18

*Vinh Du v. Blackford*,
2018 WL 6604484 (D. Del. Dec. 17, 2018) ............................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................................ 21

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
726 F.2d 956 (3d Cir. 1983) .................................................................................... 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................Passim

Fed. R. Civ. P. 23(a) ............................................................................................ 20, 21, 22, 23

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 21

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 21

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 22

Fed. R. Civ. P. 23(b) ............................................................................................................ 20, 23

Fed. R. Civ. P. 23(b)(3) ....................................................................................................... 20, 23

Fed. R. Civ. P. 23(b)(3)(A)–(D) ............................................................................................... 25

Fed. R. Civ. P. 23(c) ................................................................................................................. 10

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 10, 25

Fed. R. Civ. P. 23(e) ................................................................................................................. 2, 9

Fed. R. Civ. P. 23(e)(1) ............................................................................................................ 10

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................................ 9

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................... 6, 9, 10, 25

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 9, 10, 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................ 13, 14, 17, 20

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................................. 18

Fed. R. Civ. P. 23(e)(3) ........................................................................................................ 11, 18

Fed. R. Civ. P. 23(g) ................................................................................................................. 26

**Other Authorities**

Manual for Complex Litigation, § 21.312 ................................................................................ 25

## INTRODUCTION

Plaintiff John Neubert ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, hereby respectfully moves the Court for preliminary approval of the proposed class action settlement ("Settlement") set forth in the Settlement Agreement and Release ("Settlement Agreement" or "SA") (attached as **Exhibit 1** to the contemporaneously filed Declaration of Nicholas A. Colella ("Colella Decl.")). Plaintiff, with consent of Defendant Lehigh University ("Lehigh," the "University," or "Defendant"), respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the Settlement; (2) approving the form and content of the Notice to be sent to the members of the Potential Settlement Class[1] pursuant to the plan detailed in the Settlement Agreement; and (3) scheduling a final fairness hearing.

Plaintiff, on behalf of himself and a proposed class of individuals, has agreed to settle all claims against Lehigh as to tuition and fees paid during the Spring 2020 semester. Plaintiff alleges that Lehigh contracted with, charged, and collected from its students funds for in-person education and on-campus access and services, but that Lehigh failed to deliver an in-person education and on-campus access and services when, in response to the Covid-19 pandemic, Lehigh moved all classes to online-only and constructively closed the campus. As set forth in the Settlement Agreement, all students who do not opt-out of the Settlement will receive payment under the Settlement in consideration for the release of their claims against Lehigh. All students will receive an automatic distribution of the Net Settlement Fund, which will be allocated *pro rata* to each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and

---

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

Fees assessed to Potential Settlement Class Members enrolled at Lehigh during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Potential Settlement Class Member enrolled at Lehigh during the Spring 2020 semester, less Financial Aid and any unpaid balances related to the Spring 2020 term as reflected on the Settlement Class Member's account with Lehigh, and any refunds already distributed related to Spring 2020 semester.

As set forth below, the proposed Settlement is the product of fully informed, arm's-length settlement negotiations, including a mediation session with Hon. Thomas J. Rueter (Ret.) of JAMS. Given these factors, and those more fully discussed below, the Settlement meets Rule 23(e)'s requirements for the issuance of notice. Plaintiff therefore respectfully requests that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.[2]

## BACKGROUND AND STATUS OF THE LITIGATION

On February 26, 2024, Plaintiff Zoe Khaitan filed a Class Action Complaint in the United States District Court for the Eastern District of Pennsylvania styled *Khaitan v. Lehigh University*, Case No. 5:24-cv-00831-JFL (ECF 1) (the "Action"). On March 14, 2024, Plaintiff John Neubert filed an Amended Class Action Complaint in the United States District Court for the Eastern District of Pennsylvania (ECF 6) ("Amended Complaint" or "AC"). The Amended Complaint dropped Ms. Khaitan as a named plaintiff.

On May 16, 2024, Lehigh filed its Answer and Affirmative Defenses to the Amended Complaint denying the allegations therein and that the Named Plaintiff or members of the putative were entitled to any damages as a result of Lehigh's transition to remote instruction during the

---

[2] While Lehigh denies liability, it does not oppose this Motion, and supports preliminary approval of the Settlement Agreement, certification of the proposed class for settlement purposes only, and dissemination of the Class Notice to the students.

second half of the Spring 2020 semester. ECF 19. On July 9, 2024, the Parties had their Initial

Case Management Conference (ECF 21), and the Court issued a Scheduling Order on July 10,

2024 (ECF 22).

Thereafter, in anticipation of mediation, the Parties exchanged detailed information related

to the amount of tuition and fee payments made by or on behalf of the putative class members, the

size of the putative class, and Lehigh's tuition and fee refund policies and practices during the

Spring 2020 semester. The Parties also provided each other and the mediator with detailed pre-

mediation submissions setting forth their views on the merits of the case, the likelihood the case

could be certified as a class action, the bona fides of the Named Plaintiff to represent the putative

class, and positions on the factual support for and viability of the claims asserted in the Amended

Complaint. Finally, the Parties exchanged demands and offers in an effort to reach a settlement of

the Action.

On August 13, 2024, the Parties held a mediation session in front of Judge Rueter. During

the mediation, which was held in Philadelphia and lasted a full day, the Parties were able to reach

a settlement in principle, with the guidance of Judge Rueter. The Parties thereafter executed a

Term Sheet encompassing the resolution, and, over the ensuing months, the Parties negotiated the

final terms of the Settlement and its supporting exhibits.

Based upon their independent analysis, and recognizing the risks of continued litigation,

counsel for Plaintiff believe that the proposed settlement is fair, reasonable, and in the best interest

of Plaintiff and the Class. Although Lehigh denies liability, Lehigh decided to enter into this

Settlement on the terms and conditions stated herein to avoid further expense, inconvenience, and

burden, and the uncertainty and risks of litigation. For those reasons, and because the Settlement

is contingent on Court approval, the Parties submit their Settlement Agreement to the Court for its review.

### SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The key components of the Settlement are set forth below, and a complete description of its terms and conditions are contained in the Settlement Agreement.

**A.    Class Definition**

Through the Settlement Agreement, the Parties stipulate to the following Class definition:

> All Lehigh University students—inclusive of undergraduate, graduate, and doctoral—who satisfied their payment obligations for the Spring Semester 2020 (tuition and/or mandatory fees, defined as Student Activity Fees and/or Technology Fees) who were enrolled in at least one in-person, on-campus class.

Excluded from this definition is: (i) any person who withdrew from Lehigh on or before March 12, 2020, (ii) all students who received full Lehigh-funded scholarships for the Spring 2020 semester; and/or (iii) Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trustees, representatives, employees, principals, servants, partners, joint venturers, and/or entities controlled by Defendant; and/or Defendant's heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers. SA ¶ 1(u). The Parties estimate that there are approximately 5,164 individuals in the Settlement Class. Should the Court grant final approval of the Settlement, by operation of law and as set forth in Paragraph 9 of the Settlement Agreement: (a) all members of the Releasing Settlement Class Parties shall be deemed to have released any and all Released Claims against the Released Lehigh Parties, and (b) shall forever be barred and enjoined from prosecuting any or all of the Released Claims against any of the Released Lehigh Parties.

### B.    The Proposed Class Notice

The Settlement Agreement provides for dissemination of a Short Form Notice. The Short Form Notice will provide Potential Settlement Class Members with pertinent information regarding the Settlement as well as directing them to the Long Form Notice, the Settlement Website, and the contact information for Class Counsel. Within thirty (30) days after entry of the Preliminary Approval Order, Lehigh shall provide the Settlement Administrator with a list from the University Registrar's records that includes the names and last known email address and postal address, to the extent available, belonging to all Potential Settlement Class Members. *See* SA ¶ 15.

Shortly after receiving the Class List, the Settlement Administrator will send the Short Form Notice (attached to the SA as **Exhibit A-1**) via email or U.S. Mail. *See* SA ¶ 16. The Short Form Notice shall advise the Potential Settlement Class Members of their rights under the Settlement, including the right to be excluded from and/or object to the Settlement or its terms. The Short Form Notice shall also inform Potential Settlement Class Members that they can access the Long Form Notice on the Settlement Website. The Long Form Notice shall advise the Potential Settlement Class Members of the procedures specifying how to request exclusion from the Settlement or submit an objection to the Settlement. *See* SA ¶ 17.

Before the issuance of the Short Form Notice, the Settlement Administrator shall also establish a Settlement Website, which will include the Settlement Agreement, the Long Form Notice, any relevant Court orders regarding the Settlement, and a list of frequently asked questions mutually agreed upon by the Parties. *See* SA ¶ 18. Contact information for the Settlement Administrator, including a Toll-Free number, as well as Settlement Class Counsel's contact information will be provided. No later than sixty (60) days after entry of the Preliminary Approval Order, Lehigh will provide a link to the Settlement Website on its website. *See* SA ¶ 19. The form and method of Class Notice agreed to by the Parties satisfies all due process considerations and

meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(B). The proposed Long Form Notice describes plainly: (i) the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval Hearing; (iii) how the recipients of the Class Notice may object to the Settlement; (iv) the nature and extent of the release of claims; (v) the procedure and timing for objecting to the Settlement; and (vi) the form and methods by which Potential Settlement Class Members may either participate in or exclude themselves from the Settlement.[3]

### C.    Monetary Terms

The proposed Settlement Amount is a non-reversionary cash payment of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00). *See* SA ¶ 38. In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Settlement Administrator, and any court-approved Case Contribution Award to the Plaintiff, in recognition of the risks and benefits of his participation and substantial services he performed. *See* SA ¶ 39. After all applicable fees, expenses and awards are deducted, the Net Settlement Fund will be allocated *pro rata* to each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Potential Settlement Class Members enrolled at Lehigh during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Potential Settlement Class Member enrolled at Lehigh during the Spring 2020 semester, less Financial Aid and any unpaid balances related to the Spring 2020 term as reflected on the Settlement Class Member's account with Lehigh, and any refunds already distributed related to Spring 2020 semester . SA ¶ 4. To the extent that a Potential Settlement Class Member properly executes and files a timely request to be excluded from the Settlement Class, the

---

[3] *See generally* Colella Decl. and exhibits attached thereto.

amount that would have been distributed to such Potential Settlement Class Member had they not filed an opt-out request will instead be distributed equally to the remaining Settlement Class Members. SA ¶ 5.

Should the Court grant preliminary approval of the Settlement, Lehigh shall pay $55,000 into the Settlement Fund within thirty (30) days, with the remainder of the Settlement Fund to be paid within thirty (30) days of final approval. *See* SA ¶ 38. Within sixty (60) days after Final Approval, the Settlement Administrator will send Settlement Class Members their portion of the Settlement Benefit by check, Venmo, or PayPal. *See* SA ¶¶ 7-8. The Settlement Administrator will pay all legally mandated Taxes prior to distributing the settlement payments to Settlement Class Members. *See* SA ¶ 43.

Settlement Class Members shall have one hundred and eighty (180) days from the date of distribution of the checks to cash their check for the Settlement Benefit. All funds for Uncashed Settlement Checks shall, subject to Court approval, be applied to a financial aid fund for Lehigh students. *See* SA ¶¶ 1(nn), 8.

**D.    Dismissal and Release of Claims**

Upon the Settlement becoming Final, Settlement Class Members shall be deemed to have forever released any and all causes of action, suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, covenants, contracts, losses, expenses, liens, demands, judgments, costs (including attorneys' fees), damages, obligations, and all other legal responsibilities in any form or nature, including but not limited to, all claims relating to or arising out of state, local, or federal statute, ordinance, regulation, or law, contract, tort, or any other claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, from the beginning of the world to the Effective Date, arising out of or in any way allegedly related to (i) tuition and/or mandatory fees charged to, paid by, and/or incurred by or on

behalf of any Settlement Class Member at the University in connection with the Spring 2020 Semester, and/or (ii) the Action, and/or (iii) Lehigh's transition to remote education with respect to the COVID-19 pandemic, or the implementation or administration of such remote education during the Spring 2020 semester. This includes all claims that were brought or could have been brought in the Action. These releases are described in the proposed Long Form Notice.

### E.    Proposed Schedule Following Preliminary Approval

| EVENT | TIMING |
|---|---|
| Mailing of Class Notices | Within thirty (30) calendar days after entry of Preliminary Approval, Lehigh will produce a list of Potential Settlement Class Members to the Settlement Administrator (SA ¶ 15). <br><br> Within forty-five (45) calendar days after entry of Preliminary Approval, the Settlement Administrator will send the Short Form Notice to Potential Settlement Class Members (SA ¶ 16). |
| Deadline for Filing Objections to the Settlement | Within forty-five (45) days after the issuance of the Short Form Notice (SA ¶¶ 21, 26). |
| Deadline for Submitting Requests for Exclusion from the Settlement | Within forty-five (45) days after the issuance of the Short Form Notice (SA ¶ 21). |
| Final Approval Hearing | No less than seventy-five (75) days after the Short Form Notice is disseminated (or 120 days from Preliminary Approval) (SA ¶ 36). |

## STATEMENT OF THE QUESTIONS INVOLVED

1) Is the proposed Settlement Agreement fair, reasonable, and adequate such that preliminary approval is appropriate?

2) Is the proposed Notice plan the best notice that is practicable under the circumstances?

## ARGUMENT

Federal Rule of Civil Procedure 23(e), as amended in 2018, "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 2:17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The court then decides whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (emphasizing that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

At this "preliminary approval" stage, a district court may provisionally certify a class, "leaving the final certification decision for the subsequent fairness hearing." *Hall*, 2019 WL 3996621, at *2; *accord Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1 (E.D. Pa. Jan. 23, 2019); *Myers v. Jani-King of Philadelphia, Inc.*, No. 09-cv-1738, 2019 WL 2077719, at *2 (E.D. Pa. May 10, 2019) (stating that preliminary approval is not a commitment to grant final approval but "establishes an initial presumption of fairness").

If the Court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice is usually sent under both Rule 23(e)(1) (regarding settlement) and Fed. R. Civ. P. 23(c)(2)(B) (regarding class certification). *See* 2018 Advisory Committee Notes on Rule 23(c); *Fulton-Green,* 2019 WL 316722, at *1, *5 (granting motion for preliminary approval of settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451, at *2-4 (E.D. Pa. Dec. 19, 2014) (conditionally certifying class, preliminarily approving settlement, and directing notice to proposed class); *In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *1 (E.D. Pa. Feb. 12, 2013) (same).

## A.    The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval.

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified

under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[4]

In determining whether preliminary approval is warranted, the Court should consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted); *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-cv-03737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (same). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472. The Settlement here, as explained below, exceeds the preliminary approval threshold. Plaintiff, without opposition from Defendant, respectfully requests that this Court preliminarily approve the proposed Settlement.

### i. The proposal was negotiated at arm's-length.

As referenced above, the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective

---

[4] As the court in *Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) explained, the Rule 23(e)(2) factors largely overlap with the nine factors the Third Circuit directed courts to consider when determining the fairness of a proposed settlement in *Girsh v. Jepson*. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Blackford*, 2018 WL 6604484, at *6 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). These factors weigh in favor of the Settlement's approval.

positions in this litigation, assisted by a neutral and highly experienced mediator. These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *See, e.g., In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's-length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included mediation).

The Parties participated in settlement discussions mediated by the Hon. Thomas J. Rueter (Ret.) during a full-day mediation in Philadelphia, PA. Colella Decl. ¶ 7. Class Counsel who negotiated the Settlement are knowledgeable and respected class action litigators with significant experience in complex cases. *Id.* at ¶¶ 18-19; Declaration of Anthony Alesandro ¶¶ 3-6 ("Alesandro Decl."). After reaching an agreement in principle, the Parties spent significant time drafting and revising drafts of the full Settlement Agreement, proposed notices, and proposed orders, and selecting the Settlement Administrator. Colella Decl. ¶ 10. At all times, these negotiations were at arm's-length, and were courteous, professional, intense, and hard-fought on all sides. *Id.*

### ii.    *The relief provided for the class is adequate.*

This case and the proposed Settlement are the product of significant investigation of Plaintiff's and Class Members' claims. Class Counsel conducted extensive and lengthy research into the issues presented in this matter, reviewed documentation and all information that Lehigh produced, reviewed and analyzed publicly available financial information, and analyzed the applicable legal precedents and previous settlements in similar cases. Colella Decl. ¶ 13.

While the Parties did not engage in extensive formal discovery, the information uncovered and reviewed by Class Counsel, including informal discovery produced via the mediation process, provided the information needed for Class Counsel to objectively evaluate the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims.[5] *Id.* ¶ 6.

Based on the information obtained from this discovery and through public financial information, Class Counsel's independent investigation of the relevant facts and applicable law, and Class Counsel's broad experience with other complex and novel cases, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶ 14.

                iii.    *The settlement accounts for the costs, risks, and delay of trial and appeal.*

To determine whether a settlement provides adequate relief to the Class, the Court must evaluate "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which involves considering the "complexity, expense, and likely duration of the litigation," were this case to proceed to trial, in relation to the Plaintiff's "likelihood of success" on the merits. *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-cv-6160 (KM), 2018 WL 10133574, at *3 (D.N.J. June 29, 2018). The likelihood of success on the merits necessarily implicates certain *Girsh* factors as well, including the concerns about the maturity of the substantive issue, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class

---

[5] The fact that the Parties have not yet completed full discovery is not determinative. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green,* 2019 WL 316722, at *3 (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case"); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *9, n.4 (E.D. Pa. July 30, 2021) (stating that it "is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important *informal* discovery") (emphasis added).

through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with the *Girsh* factors.

The immediate benefits that the Settlement provide stand in contrast to the risks, uncertainties, and delays of continued litigation. Class Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Colella Decl. ¶ 14. If litigation continues, Plaintiff and Class Members would need to overcome a number of issues, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig*., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp*., No. 4:08-cv-2317, 2013 WL84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources."). Although Class Counsel are confident in their ability to overcome these challenges, they create risks for the Class that must be weighed against value of any potential recovery.

The strength of the settlement here is demonstrated, in part, by comparison with monetary recoveries in other university settlements involving tuition refunds following transition from in-person to remote online learning caused by the Covid-19 pandemic and resulting governmental orders. *See, e.g., Smith et al v. University of Pennsylvania*, Case No. 2:20-cv-02086-TJS (E.D. Pa.) ($4.5 million settlement with a per student recovery of $173.08); *Choi et al v. Brown University*, Case No. 1:20-cv-001914-JJM-LDA (D.R.I.) ($1.5 million settlement with a per student recovery

of $155.44); *Fittipaldi v. Monmouth University*, Case No. 3:20-cv-05526-RLS (D.N.J.) ($1.3 million settlement with a per student recovery of $206.50); *Rocchio v. Rutgers, The State University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) ($5 million settlement with a per student recovery of $77.48); *Metzner et al v. Quinnipiac University*, Case No. 3:20-cv-00784-KAD (D. Conn.) ($2.5 million settlement with a per student recovery of $274.09); *Espejo et al v. Cornell University*, Case No. 3:20-cv-00467-MAD-ML (N.D.N.Y.) ($3 million settlement with a per student recovery of $115); *Carpey v. Board of Regents of the University of Colorado*, No.: 2020cv31409 ($5 million settlement with a per student recovery of $83.33). Here, the gross per student recovery is $339.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiff and the Settlement Class. If not for the Settlement, Plaintiff would be faced with the task of extensive and contentious motion practice including moving for class certification and/or opposing Lehigh's motion for summary judgment, which could have resulted in dismissal of this case. While Plaintiff believes he would have prevailed, Plaintiff acknowledges there are risks involved in this litigation—a relatively new area of law—including proving the existence of an implied contract, or that Lehigh has been unjustly enriched. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval). Given that the case law is still developing, there is uncertainty whether Plaintiff would likely prevail on the merits had the case gone to trial.

Plaintiff likely would have incurred significant costs to prove his case through fact and expert discovery, and possibly trial. *See, e.g.*, *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (recognizing that continued litigation "would

be a time consuming and expensive process that would delay relief for class members"); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752, 2020 WL 4212811 (LHK), at *8 (N.D. Cal. July 22, 2020) (approving settlement after finding, among other things "[l]itigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony"), *appeal dismissed*, No. 20-cv-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense"), *judgment entered*, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003). Given the novel nature of the alleged misconduct, this Action would necessarily involve a battle of experts with respect to damages and other issues. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (explaining that the first *Girsh* factor favors approval of a settlement when the case involves "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues"); *see also In re Yahoo!*, 2020 WL 4212811, at *9, 13 (noting that prior to settlement of class action, plaintiffs produced four different expert reports, and defendants deposed four experts and filed three *Daubert* motions to exclude plaintiffs' experts).

The costs and risks would only further increase as the Parties contest class certification, file motions *in limine*, and proceed through to trial and any related appeals. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Class, finality as to the Parties, and the preservation of the Court's time and resources that can be redirected elsewhere.

The Settlement appropriately balances the strength of Plaintiff's case against the risks and potential outcomes of continued litigation. *See Geis v. Walgreen Co.*, No. 07-cv-4238, 2010 WL 11570447, at *12 (D.N.J. Sept. 30, 2010) (finding that several obstacles at trial meant that "the

risks of continued litigation and the benefits of immediate settlement favor settlement"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth, and sixth *Girsh* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement.

    *iv. The settlement provides for an effective method of distributing relief to the Class.*

   The Settlement creates a straight-forward and automatic distribution procedure for Class Members to receive benefits. SA ¶¶ 6–7. It also provides for effective notice to Class Members using email and, if no email is available, U.S. mail, and Class Counsel is confident that the addresses of nearly all Class Members will be ascertained by the time Notice is issued. SA ¶ 16; Colella Decl. ¶ 15; *See also* RG/2 Decl.[6] A link to the Settlement Website will also be publicized on Lehigh's website. SA ¶ 19. For this reason, Class Members are likely to gain familiarity with the terms of the Settlement and their rights.

    *v. The proposed attorneys' fee award is reasonable.*

   Class Counsel has devoted significant time and financial resources to the litigation despite the uncertainty of prevailing at class certification and on the merits, and of establishing damages. Pursuant to the Settlement Agreement, prior to a Final Approval Hearing, Class Counsel will file a motion seeking an amount not to exceed thirty-three and one-third percent (33.33%) of the Settlement Amount as a fee award, plus reimbursement of all reasonable litigation expenses incurred. This maximum amount that Class Counsel can request is presumptively reasonable. In *In re Ravisent Techs., Inc. Sec. Litig.,* Judge Surrick noted that "courts within [the Third] Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences. Inc. Sec. Litig.,* Civ. A. No. 01–5266

---

[6]  Declaration of Stephanie M. Valerio of RG2 Claims Administration LLC filed contemporaneously herewith.

(E.D. Pa. Oct. 29, 2004)) (awarding one-third recovery of $3.3 million settlement fund, plus expenses). Importantly, this fee request is plainly documented in the proposed Short Form and Long Form Notices.

<em>vi.    Additional agreements required to be identified under Rule 23(e)(3)</em>

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. *See also* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). Other than the Settlement Agreement itself, there are no additional agreements involving the parties related to this Settlement. Colella Decl. ¶ 9.

<em>vii.    The remaining Girsh factors also support approval of the Settlement.</em>

Given the present posture of the Action, it is too early to evaluate the second *Girsh* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, Plaintiff, whose interests are aligned with the Settlement Class, supports the Settlement and has been closely involved in its negotiation. Colella Decl. ¶ 11.

The third *Girsh* factor asks whether sufficient discovery has been completed to provide the parties with a "clear view of the strengths and weaknesses of their cases." *In re Ravisent Techs.*, 2005 WL 906361, at *8 (internal citations omitted). This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"); *see also* note 5, *supra*. As described above, Class Counsel had more than sufficient information, along with the help of neutral Hon. Thomas J.

18

Rueter (Ret.), to assess the Settlement in light of the strengths of the case and determined that the Settlement is fair, reasonable, and adequate.

The seventh *Girsh* factor, the ability to withstand a greater judgment, is relevant if "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This factor is not dispositive, and courts apply a flexible standard as to how much weight it is given based on the unique circumstances of a given case.[7] When "the Court has not been presented with any reason to believe that [defendant] faces any financial instability . . . this [*Girsh*] factor is largely irrelevant for the purpose of resolving the instant motion." *Id.* at 254.

Finally, the Settlement should also be approved under the eighth and ninth *Girsh* factors because it is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)). Given that Covid-19 litigation is an emerging area of law, the risk of continued litigation is significant, making the instant settlement, which provides significant relief to the class, now as opposed to years of litigation without the guarantee of recovery, even more reasonable.

---

[7] *See Reibstein*, 761 F. Supp. 2d at 254-55 ("[T]his factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow.")

**B.    The Settlement Treats Class Members Equitably Relative to Each Other.**

Finally, as discussed above, the Settlement treats all Class Members equitably and provides all Class Members with the same convenient means to recover under the Settlement by distributing the funds in a manner that takes into account each Settlement Class Member's individual share of the potential damages suffered by the class. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The proposed Settlement's distribution clearly satisfies the fair and equitable treatment requirement.

The *Girsh* factors and Rule 23(e)(2)(C)(i) thus support approval of the Settlement.

**C.    The Proposed Settlement Class Satisfies the Criteria of Rule 23.**

Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2. The proposed Settlement Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, as required by Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members," and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the Settlement Class should be preliminarily certified, pending a final certification order after the Fairness Hearing.

*i.  Rule 23(a) - Numerosity*

The proposed Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. Here, there are approximately 5,164 students in the Class. *See* Colella Decl. ¶ 7. The numerosity requirement is therefore amply satisfied.

*ii.  Rule 23(a) - Commonality*

The proposed Class also satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357-360 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50. The commonality inquiry focuses on the defendant's conduct. *Sullivan*, 667 F.3d at 297 ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000). Here, commonality exists because the Class Members' claims share several common questions of law or fact, including: (a) whether Defendant engaged in the conduct alleged herein; (b) whether there is a difference in value between online distance learning and live in-person instruction; (c) whether Defendant breached its contracts with Plaintiff and the other members of the Class by retaining tuition and fees without providing the services the tuition and fees were intended to cover; (d) whether certification of the Class proposed herein is appropriate under Fed. R. Civ. P. 23; (e) whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and (f) the amount and nature of relief awarded to Plaintiff and the other Class Members.

As such, the Class raises common questions of law and fact which arise from a "common nucleus of operative facts" with respect to their claims against Defendant. *See In re Centocor, Inc. Secs. Litig. III*, No. 2:98-CV-00260, 1999 WL 54530 at *2 (E.D. Pa Jan. 27, 1999).

### iii.    Rule 23(a) - Typicality

Rule 23(a)(3) requires that a named plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. Dec. 15, 1994). "When a defendant has engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Sherman v. American Eagle Exp., Inc.*, No. 09-575, 2012 WL 748400, at *5 (E.D. Pa. March 8, 2012) (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001)). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016). Plaintiff's experiences were typical of all other students. Plaintiff and each member of the Class enrolled as on-campus students at Lehigh, registered for in-person classes, complied with Lehigh's policy and procedures, satisfied their tuition and/or fee obligations for in-person and on-campus facilities and services, were denied the same when Lehigh closed its campus in Spring 2020, and did not receive a *pro rata* tuition and fee refund. Moreover, the members of the proposed Class have no individual interests in controlling the litigation because, unlike a tort claim, all of their claims share a common set of facts. As such, Plaintiff's claims are typical of the claims of members of the proposed class.

> *iv.  Rule 23(a) - Adequacy*

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).

Here, adequacy is readily met. First, Plaintiff has no adverse or "antagonistic" interests towards absent Class Members. Plaintiff seeks to hold Defendant accountable for, among other things, failing to refund the portion of tuition and fees associated with the part of the Spring 2020 semester during which it failed to provide in-person education and on-campus access and services. Further, Plaintiff has demonstrated allegiance and commitment to the Litigation. As such, Plaintiff's interests are well aligned with the interests of the absent Class Members. Second, Class Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including several similar class action suits related to Covid-19. *See* Colella Decl. ¶¶ 18-19; Alesandro Decl. ¶¶ 3-6. Accordingly, the adequacy requirement is satisfied.

> **D.  Rule 23(b) Requirements Are Satisfied Here.**

Under Rule 23(b)(3), a class may be certified when the court finds that (1) common questions of law or fact predominate over individual issues and (2) a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. Superiority requires the court "to balance, in terms of fairness and efficiency,

the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998). Plaintiff readily meets both requirements.

"[The] predominance test asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370 (3d Cir. 2015) (citations and quotation marks omitted). "Predominance begins, of course, with the elements of the underlying cause of action." *Id.* Nevertheless, "the presence of individual questions does not *per se* rule out a finding of predominance" and if common issues "overwhelm individual issues, predominance should be satisfied." *Id.* at 371. Notably, the Third Circuit has remarked that it is "more inclined to find the predominance test met in the settlement context." *In re NFL*, 821 F.3d at 434 (quoting *Sullivan*, 667 F.3d at 304 n.29). Here, the common issues—whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with in-person, on-campus instruction, educational services, and use of facilities after March of 2020, yet retaining the tuition and fees paid for the same—clearly predominate over any individual issues that may exist. Each Class Member suffered similar harm for the same amount of time due to the same actions or inactions of Defendant. Further, the alleged contractual arrangements between each of Defendant's students and Defendant—receiving in-person, on-campus instruction, educational services, and use of facilities—are substantively identical. Similarly, the nature of Defendant's alleged breach is the same for each member of the Class, regardless of their academic major, scholarships, or any other ancillary criteria.

Second, the Federal Rules of Civil Procedure direct courts to weigh the following factors to determine whether a class action is superior to other alternative methods of adjudication:

"(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, each of these factors weighs in favor of finding that superiority is satisfied.

Plaintiff and the other Class Members, due to Defendant's alleged misconduct, experienced almost identical circumstances. Seeing that these cases involve a relatively small amount of damages compared to the enormous investment of time and money that it will take to litigate them, individual plaintiffs would have little interest in and gain little benefit from initiating separate actions, and individual lawsuits would needlessly waste judicial resources as each lawsuit would likely involve the same evidence concerning Defendant's alleged wrongdoing. Indeed, this proposed settlement effectively resolves approximately 5,164 students' lawsuits. Accordingly, the Court should preliminarily approve the Class such that Notice may be effectuated.

### E. The Proposed Settlement Notice to the Class Should be Approved

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise...." Manual for Complex Litigation, § 21.312. "First, Rule 23(c)(2)(B) requires 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2022 WL 3042766, at \*10 (E.D. Pa. Aug. 2, 2022) (citing *In re NFL*, 821 F.3d at 435). "Additionally, principles of due process 'require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'" *Id.* (finding notice sufficient where notice was sent via email, then by postcard if an email bounced back).

Here, the Parties' proposed notice plan includes email (where available), direct mail (where email is not available), and publishing a link to the Settlement Website on Lehigh's website. SA ¶¶ 15-19. Information can likewise be found by visiting the Settlement Website. This comprehensive notice plan is intended to fully inform Potential Settlement Class Members of the proposed Settlement, and the information they require to make informed decisions about their rights. The proposed Short Form and Long Form Notices contain "simple and straightforward language and not legalese" and "the notice program is robust and is likely to ensure that all members receive notice of the claims and their rights with respect to the settlement." *Caddick v. Tasty Baking Co.,* No. 2:19-CV-02106-JDW, 2021 WL 1374607, *2 (E.D. Pa. Apr. 12, 2021). Accordingly, this Court should approve the form of notice and the method of publication that Plaintiff proposes as they satisfy the due process requirements of Fed. R. Civ. P. 23.

### F.    Nicholas A. Colella of Lynch Carpenter, LLP and Michael Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. Should be Appointed as Class Counsel

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel—Nicholas A. Colella of Lynch Carpenter, LLP, and Michael Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C.—easily meet the requirements of Rule 23(g). *See* Colella Decl. ¶¶ 18-19; Alesandro Decl. ¶¶ 3-6; *see also* Resumes of Lynch Carpenter, LLP, and Leeds Brown Law, P.C. Importantly, Plaintiff is represented by counsel experienced in class action litigation including directly analogous cases. Indeed, Class Counsel and their firms have worked on dozens of university tuition refund cases and have been appointed class counsel in substantially similar matters. *See* Colella Decl. ¶¶ 18-19; Alesandro Decl. ¶¶ 3-6. Moreover, Class Counsel's work in

this case on behalf of the Plaintiff and the proposed class has been substantial. As such, this Court should appoint Nicholas A. Colella of Lynch Carpenter, LLP, and Michael Tompkins and Anthony M. Alesandro of Leeds Brown Law, P.C. as Class Counsel.

## CONCLUSION

The proposed Settlement is fair, reasonable, and adequate. Thus, for all the reasons set forth above, preliminary approval should be, respectfully, granted and the Preliminary Approval Order entered to permit the Parties to effectuate notice to the Potential Settlement Class Members.


Dated: January 10, 2025                          Respectfully submitted,

                                                 */s/ Nicholas A. Colella*
                                                 Nicholas A. Colella (PA 332699)
                                                 **LYNCH CARPENTER, LLP**
                                                 1133 Penn Avenue, 5th Floor
                                                 Pittsburgh, PA 15222
                                                 Phone: (412) 322-9243
                                                 NickC@lcllp.com

                                                 Michael Tompkins, Esq.
                                                 Anthony M. Alesandro, Esq.
                                                 **LEEDS BROWN LAW, P.C.**
                                                 One Old Country Road, Suite 347
                                                 Carle Place, New York 11514
                                                 Tel: (516) 873-9550
                                                 mtompkins@leedsbrownlaw.com
                                                 aalesandro@leedsbrownlaw.com

                                                 *Attorneys for Plaintiff*